IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ROY A. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CBD-10-1882 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, Social Security | ) |
| Administration | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Roy A. Carter, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner for the Social Security Administration ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"). The Court has reviewed said motions and the applicable law. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.

### I. Background

Plaintiff filed for DIB and SSI on October 21, 2004. (R. 58). Initially he was denied on August 16, 2005 and again upon reconsideration. Id. Plaintiff then filed a request for a hearing on August 29, 2005 which was granted. On May 3, 2006, the first hearing in this matter was held before the Administrative Law Judge ("ALJ"). The ALJ ruled Plaintiff disabled

1

as of October 5, 2005. (R. 58, 68). Plaintiff requested a review of this decision by the Appeals Council as to the onset date. The Appeals Council ultimately remanded the case for further clarification as to whether Plaintiff was disabled before October 5, 2005. (R. 71). The Appeals Council charged the ALJ with further evaluating Plaintiff's mental impairments, further discussing the opinion of the treating source, and further developing the record with concern to the period from September 16, 2004 to October 5, 2005. (R. 71-2, 510). On June 2, 2008, a second hearing was held in order to determine whether Plaintiff was entitled to a finding of disability beginning on September 16, 2004. (R. 18). On June 25, 2008, the ALJ found Plaintiff not disabled for the aforementioned period. (R. 27). Plaintiff subsequently requested review of this second decision by the ALJ, which was denied on May 17, 2010, making the ALJ's 2008 decision final and appealable. (R. 7-9).

## II. ALJ's Decision

In 2008, the ALJ re-examined Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520. At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity ("SGA") since September 16, 2004 – the alleged onset date. (R. 21). At the second step, the ALJ determined that Plaintiff has the following severe impairments: insulin dependent diabetes mellitus, hypertension, hepatitis C, depression, panic disorder, and a history of substance abuse. (R. 21). At step three, the ALJ determined that Plaintiff does not have any physical or mental impairments or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404 Subpart P, Appendix 1 (2009). (R. 21-3). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work limited to only routine, repetitive, and simple tasks. (R. 23-5). Based on this RFC, the ALJ found that Plaintiff could not complete any past relevant

work ("PRW"). (R. 25). At step five, the ALJ, after questioning the Vocational Expert ("VE"), concluded that based on Plaintiff's age, education, work experience, and RFC, there are jobs in existence in significant numbers in the national and local economy that Plaintiff can perform. (R. 26). In conclusion, the ALJ decided that Plaintiff was not disabled, as defined by the Act from September 16, 2004 until October 5, 2005, when disability began. (R. 26-7).

### III. Standard of Review

The role of this Court is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Johnson v. Califano, 434 F. Supp. 302, 307 (D. Md. 1977). Ordinarily if there is substantial evidence to support the decision of the Commissioner, then that decision must be upheld. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court cannot try the case de novo or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. Id.

The Court must also determine whether the Commissioner followed the correct procedures. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517. After review, the Court has the power to affirm, modify, or reverse the decision of the Commissioner, with or

3

without remanding the case for rehearing. 42 U.S.C. § 405(g); Virek v. Finch, 438 F.2d 1157, 1158 (4th Cir. 1971).

Finally, it must be noted that hearings on applications for Social Security disability entitlement are not adversary proceedings. Easley v. Finch, 431 F.2d 1351 (4th Cir. 1970). Moreover, the Act is a remedial statute and it is to be broadly construed and liberally applied in favor of beneficiaries. Dorsey v. Bowen, 828 F.2d 246 (4th Cir. 1987). A claimant is entitled to a full and fair hearing and failure to have such a hearing may constitute sufficient cause to remand the case. Sims v. Harris, 631 F.2d 26 (4th Cir. 1980).

## IV. Analysis

Plaintiff's arguments are that: A) "the ALJ failed to properly assess the Medical Expert's [Dr. Daniel Freedenburg] testimony in determining Plaintiff's onset of disability"; B) "the ALJ did not properly observe the treating physicians rule, and as a result mistakenly did not find disability as of September 16, 2004"; and, C) "the ALJ's hypothetical question to the [VE] was so incomplete, such that the Expert's testimony doesn't amount to substantial evidence to support a denial at step 5 of the sequential evaluation." The issue is whether Plaintiff's illnesses and their resulting symptoms require a finding of disability from September 16, 2004 until October 5, 2005.

The ALJ gave little weight to the medical evidence of Plaintiff's treating physician, Dr. Ambachew Woreta, who has a specialty in internal medicine. Dr. Woreta's notes do not mention any symptoms of depression, yet Dr. Woreta concludes that Plaintiff has depression in a medical assessment form completed on March 27, 2006. (R. 165). Furthermore, the ALJ determined that there were contradictory findings by a psychiatrist, Dr. Sonia Tyutyulkova, a psychologist, Dr.

4

Monica Greene, and a specialist in internal medicine, Dr. Howard Cohen. (R. 24-5). For the reasons set forth below, the decision of the ALJ is affirmed.

### A. The ALJ Properly Assessed the Medical Expert's Testimony in Determining Plaintiff Was Not Disabled.

Plaintiff contends that the ALJ failed to properly follow SSR 83-20, and further that "the ALJ failed to properly assess the Medical Expert's ("ME") testimony in determining Plaintiff's onset of disability, which is at issue in this case." (Pl.'s Mot. 19). Plaintiff claims that properly following SSR 83-20 and properly assessing the ME's testimony would lead to a disability onset date of September 16, 2004.

### 1. The ALJ Correctly Followed SSR 83-20 in Determining Onset Date of Disability.

In determining the onset disabilities of non-traumatic origin, the ALJ should look to three main factors: 1) Plaintiff's alleged date of onset; 2) "The day the impairment caused the individual to stop work"; and, 3) The medical record as a whole. SSR 83-20, 1983 WL 31249 *2 (1983). "The medical evidence serves as the primary element in the onset determination." Id.

The Court finds that the ALJ did analyze the three factors when deciding onset of disability. With regard to factor one, the ALJ considered Plaintiff's alleged onset date as referenced by his framing of his questions throughout the hearing where he refers back to 2004 and 2005. (R. 466-530). Furthermore, in his decision the ALJ makes it clear that the period in question is September 16, 2004 to October 5, 2005. (R. 18). This specifically shows a recognition, on the part of the ALJ, of Plaintiff's alleged onset date.

With regard to factor two, the last day Plaintiff worked, the ALJ considered this as well in deciding when onset of disability occurred. Plaintiff last worked in November of 2001. The ALJ ruled that Plaintiff was not engaged in SGA as of September 16, 2004, and could not

5

perform his PRW. (R. 21, 25). These rulings demonstrate the ALJ's awareness of the date Plaintiff last worked.

The final and most important factor is whether the medical record can establish an onset date of September 16, 2004. On that date, Plaintiff was diagnosed by Dr. Woreta's nurse practitioner with diabetic neuropathy and hepatitis C. (R. 185). On a chart dated December 6, 2004, the nurse practitioner diagnosed Plaintiff with depression. (R. 184). It is important to note that a diagnosis of these conditions on a certain date does not necessarily mean that Plaintiff is disabled on that date. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected." SSR 83-20, 1983 WL 31249 *3 (1983). However, the ALJ afforded Dr. Woreta's opinion little weight.[1] The ALJ determined that there was no convincing rationale to support an onset date of September 16, 2004. (R. 19, 26, 66).[2]

The ALJ explained his reasoning in support of his decision that the onset date of disability was October 5, 2005 when he said, "[Plaintiff] was hospitalized with uncontrolled blood sugars secondary to diabetes mellitus, the claimant's allegations regarding his symptoms and limitations are generally credible. In October 2005 the claimant not only developed uncontrolled blood sugar levels, but also developed a non-healing ulcer on his left leg." (R. 66).

The ALJ reviewed the entire medical record, and ruled that the onset date of Plaintiff's disability was October 5, 2005 and not September 16, 2004. (R. 61-68). Reasonable minds

---

[1] Section B of this Opinion states why the ALJ afforded Dr. Woreta's opinion little weight, a decision which was supported by substantial evidence.
[2] Plaintiff alleges that from March 23, 2005 through March 29, 2005 he was hospitalized "for elevated blood sugar of over 400, weakness, and vomiting." (Pl.'s Mot. 20). Even if the argument in Plaintiff's Motion is true then this would at best support an onset date of March 23, 2005.

6

could find the ALJ's decision regarding onset date to be supported by the medical record. Therefore, the ALJ's decision is supported by substantial evidence.

### 2. The ALJ Used the Testimony of the ME to Aid Him in Determining the Onset Date of Disability.

Plaintiff also contends that the ALJ should use the ME to establish the onset date with regards to the mental impairments. (Pl.'s Mot. 20). Plaintiff's view is correct assuming his impairments are progressive in nature. SSR 83-20, 1983 WL 31249 *2 (1983).

Dr. Freedenburg, an expert in Psychiatry and the testifying ME at the 2008 hearing, stated that Plaintiff "met the criteria for a major depressive disorder, recurrent with psychiatric features." (R. 526). When further questioned as to limitations, Dr Freedenburg stated that "claimant has moderate impairment in his activities of daily living [("ADL")], moderate impairments in social functioning, and mild to moderate difficulties in concentration, persistence, or pace. (R. 526-27).

Major depressive disorder falls under the overall medical listing of affective disorders. 20 C.F.R. §404, subpart P, Appendix 1, 12.04 (2009). This regulation has 3 component paragraphs. Paragraph A is satisfied when:

> Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > 1. Depressive syndrome characterized by at least four of the following: a. anhedonia or pervasive loss of interest in almost all activities; or b. appetite disturbance with change in weight; or c. sleep disturbance; or d. psychomotor agitation or retardation; or e. decreased energy; or f. feelings of guilt or worthlessness; or g. difficulty concentration or thinking; or h. thoughts of suicide; or i. hallucinations, delusions, or paranoid thinking; or
> >
> > 2. Manic syndrome characterized by at least three of the following: a. hyperactivity; or b. pressure of speech; or c. flight of ideas; or d. inflated self-esteem; or e. decreased need for sleep; or f. easy distractibility; or g. involvement in activities that have a high probability of painful

> consequences which are not recognized; or h. hallucinations, delusions or paranoid thinking; or
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

Id. Based on the testimony of Dr. Tyutyulkova, paragraph A of listing 12.04 may have been satisfied. However, the authority of paragraph A alone does not lead to a finding of disability under 12.04. Id.

> Paragraph B of Listing 12.04 is satisfied when paragraph A causes:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

Id. According to the definitions, "marked" is a level of severity less than extreme but more than moderate, and the episodes of decompensation of extended duration equate to three episodes in one year or an average of one episode every four months, each lasting at least two weeks. 20 C.F.R. §404, subpart P, Appendix 1, 12.00(C), 12.00(C)(4) (2009).

With regards to paragraph B, the ME testified that Plaintiff had moderate difficulties in maintaining social functioning, moderate restrictions of daily living, and mild to moderate difficulties in maintaining concentration, persistence, or pace, and some episodes of decompensation existed but they were prior to the period in question. (R. 522-27). As stated above, "marked" is a level of severity less than extreme but more than moderate. 20 C.F.R. §404, subpart P, Appendix 1, 12.00(C), 12.00(C)(4) (2009). Therefore, the ALJ's finding that paragraph B of listing 12.04 was not met is supported by the testimony of the ME.

Given Plaintiff's failure to satisfy paragraphs A and B, he still may meet the regulatory criteria by qualifying under paragraph C. Paragraph C of Listing 12.04 is satisfied when there is:

> Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>> 1. Repeated episodes of decompensation each of extended duration; or
>>
>> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>>
>> 3. Current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. §404, subpart P, Appendix 1, 12.04 (2009).

There is no evidence in the record that paragraph C was satisfied. Dr. Freedenburg stated that the listing was met; however, the ALJ determines whether the impairments meet the listing. 20 C.F.R. §404.1527(e)(2); SSR 96-5P, 1996 WL 374183 *5 (July 2, 1996). Therefore, whether the ME stated that Plaintiff met a certain listing is not dispositive but rather advisory. It is what the ALJ ultimately decides that matters.[3]

The ALJ used the ME's testimony to inform his RFC determination. The ALJ ultimately concludes that Plaintiff did not meet a listing. In doing so, the ALJ explains that while "the [Plaintiff] may have met the requirements for paragraph A [of listing 12.04], he did not meet the requirements for paragraph B or C." (R. 22). The ALJ went on to use Dr. Freedenburg's testimony to aid him in making his decision when determining step three of the disability analysis (whether severe impairments meet a listed impairment under 20 C.F.R. §404, subpart P, Appendix 1) in accordance with SSR 83-20. (R. 21-3).

---

[3] Plaintiff alleges that the ALJ never asked the ME about when Plaintiff met the listing. However, it is reasonable to assume that because the whole hearing was centered on the time between September 16, 2004 and October 5, 2005, that the questions were adequately laid out by the ALJ.

The Court finds that the ALJ properly followed SSR 83-20 and correctly considered the testimony of Dr. Freedenburg regarding the limitations of Plaintiff. The ALJ's analysis of Dr. Freedenburg's testimony is reasonable, and is supported by substantial evidence in the medical record and testimony.

### B. The ALJ Properly Followed the Treating Physicians Rule When Affording Dr. Woreta's Opinion Little Weight.

Plaintiff argues that the ALJ did not properly observe the treating physicians rule, and did not afford Dr. Woreta's opinion the proper weight. Plaintiff claims this resulted in a finding of not disabled as of September 16, 2004. While it is true that Dr. Woreta is Plaintiff's treating physician, his expertise is in internal medicine, and his determination of depression as a disability was contradicted by not only his own notes, but by the notes of a psychiatric expert as well.

The weight an ALJ determines to afford a medical opinion is based on the following non-exclusive considerations: (1) whether the source of the information examined the claimant; (2) the treatment relationship between the source and the claimant; (3) the supportability of the source's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the source is a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d)(3)-(6); see also, Johnson v. Barnhart, 434 F.3d 650, 654 n.5 (4th Cir. 2005) (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (noting that the ALJ is not required to give a treating physician's opinion greater weight than other evidence in every case)). While the ALJ did not apply the factors in a mechanical fashion, such rigid analysis is not required here. More importantly, the ALJ did not fail in his duty to articulate the reasoning behind the weight he attributes to the opinion of Dr. Woreta. Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986).

Plaintiff is correct that there are instances where a treating source opinion is entitled to controlling weight. Under 20 C.F.R. § 404.1527(d)(2), the regulations state that when "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." In other words, "if any of the evidence in [the] case record, including medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [the Agency] will weigh all of the evidence and see whether [it] can decide whether [claimant is] disabled based on the evidence" presented. 20 C.F.R. § 404.1527(c)(2). Here, the ALJ does not overstep his duty under the regulations.

1. **The ALJ's Decision to Afford Dr. Woreta's Physical and Mental Diagnoses Little Weight is Supported by Substantial Evidence.**

Dr. Woreta examined Plaintiff on March 16 2006. He then completed his medical assessment report dated March 27, 2006, concluding:

> Plaintiff has diabetes mellitus, hypertension, and a scar on his left leg, in addition to diabetic neuropathy and depression. [He also notes the following:] [that Plaintiff] does not have the capacity to be on his feet for a prolonged period of time (approximately 6 hours out of an 8 hour day), [that he] does not have the strength and endurance necessary to perform, on a sustained, regular, and continuing basis (8 hours a day, 5 days a week), the lifting of objects weighing a maximum of 20 pounds on a continuing basis and to frequently lift and carry objects weighing up to 10 pounds, [that he] has significant restrictions in his capacity for stooping, bending, climbing and crouching, [that he] has periods of impairment which require him to spend significant periods of time laying down amounting to 2 hours out of an 8 hour day, the intensity and duration of his symptoms (pain, weakness, fatigue, etc.), along with any side-effects of his medications, would cause substantial restrictions in his capacity for sustained mental alertness, concentration, and persistence in carrying out simple job duties in a competitive work environment over a regular 8 hour day, [that he] would need to be absent from work a minimum of 30 days in a work year as a result of his medical conditions. [He also notes that] Plaintiff has diabetic neuropathy and depression that will interfere with his ability to function in a competitive work environment.

(R. 163-65). The information given in this report provides Plaintiff with the basis for his argument that he is disabled. Furthermore, Plaintiff is correct that if this mental and physical RFC was adopted by the ALJ, Plaintiff could be deemed disabled under Medical Vocational Grids (the "Grids"). 20 C.F.R. subpart P, App. 2 (2009). However, given the inconsistent medical notes of Dr. Woreta, the notes of his nurse practitioner, and the contradictory evaluations from mental health experts on the issue of depression, the ALJ's decision to afford his opinion little weight was supported by substantial evidence.

Plaintiff began seeing Dr. Woreta on September 16, 2004. It is not until the March 27, 2006 medical assessment that Dr. Woreta (as compared to his nurse) mentions depression. (R. 163-65). If depression had been debilitating enough so as to qualify Plaintiff for disability on September 16, 2004, then it would have shown up in multiple, if not all of Dr. Woreta and his nurse practitioner's medical notes regarding Plaintiff. Therefore, the ALJ's decision to afford little weight to Dr. Woreta's depression diagnosis is supported by substantial evidence.

In addition, the medical assessment completed by Dr. Woreta was a check-box form which is afforded little weight. Where the form asked for descriptions Dr. Woreta gave none. (R. 163-65). O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1983) (where checkboxes were given little weight because of "inherent interpretive problems"). In the absence of further explanations, the ALJ afforded this form little weight.

The ALJ articulated his reasons for giving Dr. Woreta little weight, which the regulations require him to do. Specifically, the ALJ stated:

> Even though Dr. Woreta is the claimant's treating physician, his treating notes do not support his assessment of the claimant's limitations since September 6, 2004, when he first began seeing the claimant. In assessing the claimant's limitations, Dr. Woreta merely checked 'yes' or 'no' on a medical assessment report. His only supporting evidence of the claimant's limitations is his diagnosis of diabetes

> mellitus, hypertension, scar on left leg and hepatitis C. For the claimant's symptoms, he wrote diabetic neuropathy, hypertension and chemical dependence. He did complete one form where he mentioned depression. However, Ms. Hearn the nurse practitioner, who saw the claimant in conjunction with Dr. Woreta, made no mention that the claimant had any symptoms of depression or other mental disorder. In addition, Dr. Woreta's notes failed to mention depression as an issue.

(R. 25). Reasonable minds could find the ALJ's decision to afford Dr. Woreta's opinion little weight, regarding Plaintiff's mental symptoms to be supported by the record. Therefore, the ALJ's decision to afford Dr. Woreta little weight with regard to Plaintiff's mental symptoms is supported by substantial evidence.

Regarding Plaintiff's physical symptoms, Plaintiff is correct that on "September [16,] 2004 and December [6,] 2004 [Plaintiff] was seen for complications related to his diabetes, including leg weakness." (Pl.'s Mot. 23); (R. 184-5). He also was admitted in March 2005 to Sinai Hospital with elevated blood sugar, weakness and vomiting. (R. 156). Upon a follow up visit on April 4, 2005, Plaintiff did lose nine pounds. (R. 183). On June 29, 2005, Plaintiff was diagnosed with an open lesion on his forearm which was three inches by one inch. (R. 181). On July 14, 2005, Plaintiff was diagnosed with a benign cyst on the right lobe of his liver. (R. 193). Plaintiff alleges that these findings support Dr. Woreta's conclusions regarding Plaintiff's physical RFC, which Plaintiff argues should have been adopted by the ALJ.

These findings by Dr. Woreta do not necessarily support Dr. Woreta's physical determinations. Furthermore, many portions of the medical record (including the forms referenced above on September 16, 2004, December 6, 2004, and June 29, 2005) which Plaintiff points to as evidence supporting Dr. Woreta's physical determinations are forms and labs filled out by the nurse practitioner, which reasonable minds could find to hold little or no probative value.

13

Dr. Woreta's physical determinations are also directly contradicted by the medical assessments of Dr. Howard Cohen, a medical consultant for Maryland Department of Disability Services ("DDS"). On May 2, 2003, Dr. Cohen filled out a physical RFC form, finding that Plaintiff could:

> Occasionally lift and or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and or walk with normal breaks a total of about 6 hours in an 8 hour workday, could sit with normal breaks for a total of about 6 hours in an 8 hour workday and could push and pull an unlimited amount and that he could occasionally climb stairs or ladders, occasionally have limitations balancing, stooping, kneeling, crouching, and crawling. [Plaintiff also has] no established manipulative limitations, no established visual limitations, no established communicative limitations, and must avoid hazards in the work environment such as machinery or heights.

(R. 590-97). Dr. Cohen's findings directly contradict the conclusions of Dr. Woreta regarding Plaintiff's alleged functionality. The ALJ's RFC is ultimately supported by Dr. Cohen's conclusions. The medical opinion of a treating physician may be discounted if there is persuasive contradictory evidence. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). In this instance, the ALJ found the evidence of Dr. Cohen to be substantial, and more persuasive than Dr. Woreta's given the totality of the medical record.

The assessments of the above mentioned doctors, along with the testimony of Plaintiff, could lend a reasonable person to determine that Plaintiff was not disabled. Given the record as a whole, including the assessment of Dr. Cohen, along with the testimony of Plaintiff himself, the ALJ's decision to afford Dr. Woreta little weight with regards to the physical symptoms is supported by substantial evidence.

**2. The ALJ's Findings Were Supported by the Psychiatric Evaluation of Dr. Tyutyulkova.**

Dr. Tyutyulkova evaluated Plaintiff on January 23, 2004. In her psychiatric evaluation, Dr. Tyutyulkova describes Plaintiff as having symptoms of depression and panic attacks/anxiety

disorder with agoraphobia. (R. 207-10). Dr. Tyutyulkova opines that there are "factors that can adversely affect his prognosis [which] are external stressors that are not likely to resolve (chronic progressive medical conditions), lack of social support outside of family, comorbid substance abuse." (R. 209-10). However, Dr. Tyutyulkova also states that Plaintiff is "capable of managing his benefits." Furthermore, Dr. Tyutyulkova concludes that Plaintiff's prognosis is "fair with treatment." (R. 209-10).

The psychiatric evaluation done by Dr. Tyutyulkova is contradictory to the March 27, 2006 medical assessment by Dr. Woreta with regard to the depression analysis. The ALJ's decision is supported by the report of Dr. Tyutyulkova, and by the aforementioned Dr. Freedenburg, the testifying ME.

### 3. The Findings of Dr. Monica Greene are Consistent with the Findings of Dr. Tyutyulkova.

Dr. Monica Greene, a consultant for DDS, filled out an assessment of Plaintiff on March 2, 2004. The relevant portion is set forth below.

> [Plaintiff is] moderately limited in his ability to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting.

(R. 609-10). Dr. Greene's assessment is consistent with that of Dr. Tyutyulokova, further supporting the ALJ's decision to give weight to these findings. Ultimately, they support the ALJ's finding of no disability with regards to Plaintiff's mental impairments.

Dr. Woreta's diagnosis of depression was outside his area of expertise. Doctors Tyutyulkova, Freedenburg, and Greene's assessments contradict Dr. Woreta's. A review of the

15

record as a whole makes the ALJ's decision to afford Dr. Woreta little weight reasonable and supported by substantial evidence.

### C. The ALJ's Determination at Step 5 is Supported by Substantial Evidence.

Plaintiff argues that "the ALJ's hypothetical question to the VE was so incomplete . . . that the VE's testimony doesn't amount to substantial evidence to support a denial at step 5 of the sequential evaluation." (Pl.'s Mot. 25). Plaintiff alleges that these hypotheticals were insufficient in that they did not provide the VE with a detailed mental RFC, and that the RFC provided lacked specifics addressing Plaintiff's ability to understand, carry out or remember instructions, and other such limitations. Id. Plaintiff questions why the detailed mental RFC was not included in the ALJ's hypotheticals. However, the Court finds the ALJ's hypotheticals were adequate. The ALJ's hypotheticals were as follows:

> Q: Assume we have an individual the same age, education and past work experience as the claimant. Assume for the purposes of this hypothetical we have a medium exertional capacity, limited to routine, repetitive simple tasks with minimal interaction with others. Any jobs such an individual could perform?
> A: He could do the janitorial positions that were medium, I mean if they were medium. He described them as medium to heavy, but he could do a medium janitorial position.
> Q: And how many medium, not medium to heavy, but just medium janitorial positions are there generally in the economy?
> A: Four-thousand locally which is approximately 50 miles from this room and over 200,000 nationally. Do you want some more examples?
> Q: Sure.
> A: Packer. There are 1,000 locally, 90,000 nationally. Another example would be a stock clerk and there are 1,500 of those locally and 85,000 nationally.
> Q: All right. If we change the hypothetical and reduce it from medium down to a light exertional capacity, routine, repetitive, simple tasks, minimal interaction again, any jobs?
> A: I would say yes and examples would be an inspector. There are 1,000 locally; 70,000 nationally. Another example would be a housekeeper. There are 3,000 locally, over 200,000 nationally. Another example would be light packing positions. There are 1,500 of those locally and 150,000 nationally.

16

> Q: Any discrepancies between how the Dictionary of Occupational Titles
> describe other jobs with the limitations I gave?
> A: No.

(R. 528-29).

The purpose of the VE's testimony is to assist in the last step of the disability evaluation, in which the ALJ considers a claimant's RFC assessment, age, education and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(5). Accordingly, the hypothetical question is limited to the RFC assessment and does not need to include evidence that the ALJ does not find credible. Eichelberger v. Astrue, 2009 WL 2602360 *9 (D. Md. 2009).

In order for a VE's opinion to be relevant or helpful, it must be based upon consideration of all other evidence in the record. Chester v. Mathews, 403 F. Supp. 110 (D. Md. 1975). In addition, it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. Stephens v. Sec'y of Health, Educ. and Welfare, 603 F.2d 36 (8th Cir. 1979). The opinion of a vocational expert must be based on more than just the claimants' testimony – it should be based on the claimant's condition as gleaned from the entire record. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). When posing hypothetical questions, the ALJ "need only pose those that are based on substantial evidence and accurately reflect Plaintiff's limitations." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000). (Citations omitted). See also, McPherson v. Astrue, 605 F. Supp. 2d 744, 761 (S.D.W.Va. 2009) ("It is not necessary that the hypothetical mention the underlying diagnoses[], what is important is that the VE is presented with an accurate picture of Plaintiff's limitations."). (Citations omitted). "In the evaluation of disability on the basis of mental disorders, consideration must then be given to the degree of limitation such impairment may impose on the individual's daily activities, range of

interests, ability to take care of personal needs, and ability to relate to others." SSR 83-17, 1983 WL 31246 *2 (1983).

"The ALJ is afforded great latitude in posing hypothetical questions to a VE." Mortazavi v. Astrue, 2010 WL 3385460 (D. Md. 2010) (citing France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (quotations and citations omitted)). The basis for the ALJ's RFC is in the record. At the hearing the VE testified that she also had reviewed the record. In addition, the VE was present during the entire hearing and listened to all of the testimony presented. (R. 522-28). It should be noted that Plaintiff's counsel was afforded the chance to ask hypotheticals to the VE as well in accordance with the Guidelines. The Court does not find it necessary to remand for want of sufficient hypothetical questions to the VE. The ALJ's hypothetical questions posed to the VE were reasonable, as were the responses that followed.

## V. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence. The Court DENIES Plaintiff's Motion, and GRANTS Commissioner's Motion.

July 27, 2011

____/s/_____
Charles B. Day
United States Magistrate Judge

CBD/sm/jib